UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY S. BROOKS, Petitioner, v. STEPHEN SINCLAIR Respondent. | CASE NO. C09-1736-RAJ REPORT AND RECOMMENDATION |

Petitioner Jeffrey S. Brooks, proceeding pro se and in forma pauperis (IFP), petitions for 28 U.S.C. § 2254 habeas relief from his conviction on three counts of attempted first-degree robbery and one count of residential burglary and his sentence of 120 months confinement followed by a period of community custody. (Dkt. 13, at 1;[1] Dkt. 21 (State Court Record, hereinafter "SCR"), Exh. 1.) Mr. Brooks alleges ineffective assistance of counsel because: (1) defense counsel failed to move to suppress evidence based upon a pretrial show-up identification; and (2) defense counsel stated during opening statements that there was

1 The Court cites to the pagination of the scanned original rather than to the pagination supplied by petitioner.

sufficient evidence to show that Mr. Brooks was the person at the scene of one attempted robbery. (Dkt. 13, at 5–6; 8–13.) Because Mr. Brooks has failed to show that counsel's performance was deficient and resulted in prejudice, the Court recommends DENYING his § 2254 petition for writ of habeas corpus (Dkt. 13) and DISMISSING this matter with prejudice. The Court also recommends DENYING the issuance of a certificate of appealability.

**BACKGROUND**

On direct appeal, the Washington Court of Appeals summarized the facts as follows:

> Around 2:30 a.m. on November 13, 2005, a man walked into the Ramada Inn of Bellingham and demanded money from a hotel employee, Wanda Sturman. When Sturman told the man she did not have access to cash, he said, "[g]ive me the money or I'll shoot you." The man stood with his hand "bulged in his pocket so it appeared to be a gun in his hand." Sturman responded, "well, you are going to have to shoot me because I don't have any money." The man turned around and left, warning Sturman "not to push a buzzer."
>
> Sturman called the police. When officers arrived a few minutes later, Sturman described the man as between 5′6″ and 5′8″ tall, wearing blue jeans, a leather jacket, and a knit cap with a white stripe. She said he was Caucasian and had a scraggly mustache.
>
> While officers were investigating at the hotel, they heard of a residential burglary several blocks away. Marcus Hays and his girlfriend, Erika Thorsen, were woken up that night at about 3:15 a.m. to find Brooks standing over their bed and repeatedly demanding Hays' wallet and Thorsen's purse. According to Hays, Brooks was standing "kind of half turned away, what I would refer to as the shy pocket which is kind of the, you know, I've got something here, I'm reaching something here." Thorsen testified that "[h]e had one hand behind his back as if he was holding a weapon." As Brooks leaned over the bed, he threatened, "don't make me tie you up and hurt you."
>
> Hays told Brooks his wallet was on the other side of the room. Brooks turned, enabling Hays and Thorsen to see he did not have a weapon. Hays tackled Brooks from behind and threw him over a stair railing. Hays restrained one of Brooks' arms, and Thorsen kicked Brooks in the face. Hays restrained the other arm, and Thorsen called the police.

> Police arrested Brooks and read him the Miranda warnings. During the search incident to arrest, police found a knit hat with a stripe in Brooks' pocket. Brooks denied being at the Ramada Inn and demanding money from Hays and Thorsen. He told police that he entered the house to find a warm place to sleep. Police brought Sturman from the hotel to Thorsen's house to show her Brooks. According to Sturman, "[t]hey had lights on him and the high beams on the vehicle, the police vehicle.... I saw the person that robbed the [hotel]." The hotel lobby had been well lit, and Sturman was extremely confident in her identification.
>
> A jury found Brooks guilty of first degree attempted robbery of Sturman, Hays and Thorsen, and residential burglary.

*State v. Brooks*, 2008 WL 638180, at *1 (Wash. Ct. App. Mar. 10, 2008). The Washington Court of Appeals affirmed Mr. Brooks's conviction and the Washington Supreme Court denied his petition for review. (SCR, Exh. 9); Brooks, 2008 WL 638180, at *3.

Mr. Brooks brought two state personal restraint petitions ("PRPs"). The Washington Supreme Court Commissioner denied review of the first PRP on the condition that the superior court amend the judgment and sentence to state explicitly that the combined terms of confinement and community custody could not exceed the statutory maximum. (SCR, Exh. 18.) After Mr. Brooks moved to modify the Commissioner's ruling, the Washington Supreme Court, in a published opinion, affirmed the denial of Mr. Brooks's PRP based on the sentencing court's amendment that clarified the maximum term. In re Brooks, 211 P.3d 1023, 1028 (Wash. 2009). In October 2009, the Washington Court of Appeals dismissed the second PRP. (SCR, Exh. 32.) Mr. Brooks never sought review of that decision by the state supreme court and a certificate of appealability issued in December 2009.

Mr. Brooks filed his federal habeas petition in December 2009. (Dkt. 1.) He raises two claims of ineffective assistance of counsel that the Washington Court of Appeals rejected

on the merits on direct appeal. *Brooks*, 2008 WL 638180, at *2–*3.

**DISCUSSION**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas relief on a petitioner's adjudicated claim of ineffective assistance of counsel only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831, __ U.S. __ (2009); *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (holding that if a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief only if the decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court authority). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 407–09. When the state court's application of governing federal law is challenged, its decision "must be shown to be not only erroneous, but objectively unreasonable." *Waddington*, 129 S. Ct. at 831 (citation and quotation marks omitted); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[S]tate court findings of fact are presumed correct unless rebutted by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Gonzalez v. Pliler*, 341 F.3d 897,

903 (9th Cir. 2003). The state appellate court's factual findings are entitled to the same presumption of correctness afforded to the trial court's findings. *Williams v. Rhoades*, 354 F.3d 1101, 1108 (9th Cir. 2004). When applying AEDPA, the federal court reviews the "last reasoned decision" by a state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here the last reasoned decision on Mr. Brooks's habeas claims was issued by the Washington Court of Appeals on direct appeal.

Mr. Brooks alleges ineffective assistance of counsel because: (1) defense counsel failed to move to suppress evidence based upon a pretrial show-up identification by the hotel employee Ms. Sturman; and (2) defense counsel stated during opening statements that there was sufficient evidence to show that Mr. Brooks was involved with the attempted robbery at the hotel. (Dkt. 13, at 5–6; 8–13); Brooks, 2008 WL 638180, at *2–*3. The Court finds, and respondent concedes, that Mr. Brooks exhausted these two claims of ineffective assistance of counsel by raising them upon direct appeal, which included a petition for review to the state supreme court. (See SCR, Exh. 5, at 2 (Petitioner's Brief before the Washington Court of Appeals); SCR, Exh. 8, at 3–8 (Petitioner's Brief before the Washington Supreme Court).) In *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), the United States Supreme Court set forth the standard for evaluating a claimed violation of the Sixth Amendment right, made applicable to the states through the Fourteenth Amendment, to effective assistance of counsel. Mr. Brooks thus has the burden of showing both that counsel's performance was deficient, and that the deficient performance prejudiced the result. *Strickland* 466 U.S. at 687–88. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id.* at 697. "Judicial scrutiny of counsel's performance must be

highly deferential" because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

The Court finds that it was not contrary to, or an unreasonably application of, Supreme Court authority for the Washington Court of Appeals to have denied Mr. Brooks's two claims of ineffective assistance of counsel.

**I. Pretrial Show-up Identification**

Mr. Brooks contends that defense counsel was ineffective for not moving to suppress evidence based on Ms. Sturman's show-up identification of him. According to Mr. Brooks, his due-process right to a fair trial was compromised because it was unnecessarily suggestive for the police to have brought Ms. Sturman from the hotel to identify him given that he was at the time handcuffed and standing between uniformed police officers, and had been apprehended approximately an hour after Ms. Sturman's 911 call three blocks away. (Dkt. 13-2, at 8–13.) Mr. Brooks's contention lacks merit.

To show that defense counsel was deficient and that the deficiency prejudiced the defense, Mr. Brooks must show that the show-up identification testimony was improperly admitted. To do so, he must show "that the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (972) (*quoting Stovall v. Denno*, 388 U.S. 293, 301–02 (1967)). Biggers implies a two-part test: first, whether the identification procedure was unnecessarily suggestive; and second, whether the identification was nonetheless reliable. *Ponce v. Cupp*, 735 F.2d 333, 336 (9th Cir. 1984). The Ninth Circuit has noted that "in most

cases it is unavoidable that a show-up at the scene of a crime will be suggestive of guilt to a certain degree" such that "show-ups are not objectionable unless 'the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *United States v. Kessler*, 692 F. 2d 584, 585 (9th Cir. 1982) (*quoting United States v. Booth*, 669 F.2d 1231, 1239 (9th Cir. 1981)). Thus, "[t]he use of handcuffs or other indicia of custody will not invalidate a show-up, at least where necessary for the prompt and orderly presentation of the suspect, consistent with protection of the officers and witnesses." *Id.* at 586. In *Neil v. Biggers*, the Supreme Court set out five factors to consider in asking whether, under the totality of the circumstances, the identification remained reliable despite a suggestive pretrial procedure: (1) the witness's opportunity to view the criminal during the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the identification confrontation; and (5) the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200.

Nothing that Mr. Brooks has presented suggests that the state-court decision on this issue was contrary to, or an unreasonable application of, established Supreme Court authority. First, the Washington State Court of Appeals rejected Mr. Brooks's contention that the show-up identification was impermissibly suggestive because Ms. Sturman was "stressed out" and heard a description of Mr. Brooks over the police radio on the way to the house where Mr. Brooks was apprehended. *Brooks*, 2008 WL 638180, at *2. Second, the court of appeals examined each the five factors set forth in *Biggers* and determined that under the totality of the circumstances Mr. Brooks could not show that the show-up identification was unreliable:

> Sturman stood face-to-face with Brooks for about five minutes in a brightly lit lobby. She gave police a detailed description of Brook[]s[ ’] race, height, build, age, facial hair, and clothing. Upon identifying Brooks less than one hour later, she observed he was wearing the same pants, but not the leather coat or hat she had seen. At trial she identified a hat police found on Brooks as the one he had worn that night. Sturman testified she was ‘[e]xtremely’ certain and confident in her identification. In these circumstances, Brooks cannot show there was a substantial likelihood of misidentification.

*Brooks*, 2008 WL 638180, at *3. Because Mr. Brooks cannot show that Ms. Sturman’s identification testimony was improperly admitted, he cannot show that defense counsel provided deficient performance by failing to move to suppress the show-up identification and that his defense was prejudiced as a result. Mr. Brooks therefore cannot support his claim of ineffective assistance of counsel based upon the show-up identification.

**II. Defense Counsel’s Statement**

Mr. Brooks contends that defense counsel was ineffective because during opening statements he said, “as I said there may be sufficient evidence that [Mr. Brooks] was the person at the Ramada Inn.” (SCR, Exh. 36 (Verbatim Report of Proceedings, Oct. 2, 2006, hereinafter “VRP”), at 68; Dkt. 13-2, at 25–35.) According to Mr. Brooks, this sentence was tantamount to an admission that Mr. Brooks was guilty of attempted robbery at the hotel. Mr. Brooks’s contention has no merit.

The Washington Court of Appeals noted that the statement in question most likely was either a typographical error or a verbal misstatement. *Brooks*, 2008 WL 638180, at *3. Moments before defense counsel uttered the challenged statement, he summarized the evidence as follows: “The defense submits to you that after you have heard all of the evidence and you have heard from both sides, um, that there is actually some question as to whether or not Mr.

Brooks was the person at the Ramada Inn." (VRP, at 65.) The court of appeals further noted that even if the statement was intentional, it would not constitute deficient performance because defense counsel made the statement within the context of mounting a claim of voluntary intoxication that would concede that Mr. Brooks was at the scene of the crime but in no condition to form the requisite intent. Brooks, 2008 WL 638180, at *3. Thus, the challenged statement read within its full context was:

> [W]e submit to you that there would be insufficient evidence to convict him of the crimes charged because he simply, to put it bluntly, was out of his mind. And that's not the term obviously but he was impaired to the degree that he could not form the intent to commit these crimes but as I said there may be sufficient evidence that he was the person at the Ramada Inn.

(VRP, at 67–68.)

The state-court decision on this issue was neither contrary to nor an unreasonable application of established Supreme Court authority. Understood in context, no reasonable juror would conclude that defense counsel was conceding Mr. Brooks's guilt regarding the attempted robbery at the hotel. Moments after making the challenged statement, defense counsel concluded with the following statement:

> So, again, we simply ask you keep an open mind throughout the State's case and throughout Mr. Brook[]s['] case and when we have the opportunity of closing argument we can touch on more of these things and what we submit has been proven, what has not been proven and what the evidence shows and at that point we will be asking you, ladies and gentlemen, for a not guilty verdict.

(VRP, at 68.)

## III. Evidentiary Hearing

Mr. Brooks requests an evidentiary hearing. (Dkt. 13-2, at 35.) "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is

not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The Court finds that an evidentiary hearing is not necessary because the record refutes Mr. Brooks's factual allegations and the well-reasoned state-court decision shows that federal habeas relief is precluded.

**IV. Certificate of Appealability**

If the district court adopts the report and recommendation, it must determine whether a certificate of appealability ("COA") should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Mr. Brooks should be denied a COA because no reasonable jurist could disagree with the state court's rejection of the ineffective assistance of counsel claims. Mr. Brooks should address whether a COA should be issued in his written objections, if any, to this Report and Recommendation.

**CONCLUSION**

The Court finds that Mr. Brooks has failed to show ineffective assistance of counsel and, therefore, has failed to show that the state-court decision on his present habeas claims was contrary to, or an unreasonable application of, established Supreme Court authority. The Court recommends DENYING petitioner's § 2254 petition for writ of habeas corpus (Dkt. 13)

and DISMISSING this matter with prejudice. The Court also recommends DENYING the issuance of a certificate of appealability. A proposed order is attached.

DATED this 13th day of July, 2010.

Mary Alice Theiler
United States Magistrate Judge